Arthur **FIELD**

v.

Lila **KIRTON.**

**Civ. No. 3:93–1684 (JAC).**

United States District Court, D. Connecticut.

June 21, 1994.

Arthur Field, pro se.

Edward P. McCreery, III, Andrew J. McDonald, Pullman & Comley, Bridgeport, CT, for defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, Chief Judge:

The plaintiff, a Connecticut attorney, brings this action pursuant to 42 U.S.C. § 1983 and supplemental (or pendent) state law claims against an Assistant Attorney General of the State of New York. Pending before the court are the defendant's motion for summary judgment and the plaintiff's motion for injunctive relief.

## BACKGROUND

A review of the record reveals the following facts. On or about January 7, 1992, the People of the State of New York, acting through their Attorney General, initiated a civil lawsuit ("the New York action") against an entity known as the Swiss Conservative Group ("SCG") and its partners, Israel Raveh and William Steiger.[1] The New York action alleges that the SCG engaged in fraudulent and deceptive business practices and false advertising in an asserted scheme to refinance personal home mortgages.[2]

The plaintiff here, Arthur Field, is an attorney who practices law in Connecticut.[3]

Although not named as a respondent in the New York action, he is identified in the Verified Petition as an attorney for the SCG.[4]

On January 9, 1992, the defendant forwarded copies of the pleadings filed in the New York action to the Attorney General of the State of Connecticut.[5] On January 13, 1992, the New York State Department of Law issued a press release regarding the New York action.[6] That release nowhere names Arthur Field, the plaintiff here, or refers to him in any capacity.[7] Nor does the release convey any information not contained in the Verified Petition of the New York action, which—having already been filed in

1. *See* Defendant's Statement of Material Facts Not in Dispute (filed Jan. 14, 1994) (doc. # 27) ("Defendant's Statement"), ¶ 4; Ex. 1 (Verified Petition filed in the New York action, dated January 7, 1992 ["Verified Petition"]). Interestingly, Israel Raveh, a respondent in the New York action, and Arthur Field, the plaintiff here, initially brought this action together. *See* original complaint filed in Connecticut Superior Court, attached to Defendant's Notice of Removal (filed Aug. 20, 1993) (doc. # 1). Raveh, however, subsequently withdrew all his claims. *See* Raveh's Motion to Withdraw Complaint Against Kirton (filed Nov. 18, 1993) (doc. # 18), which was granted by this court on November 29, 1993.

 It should also be noted that Field represented Raveh in the matter of *Bentley v. Manufacturer's Hanover, et al.*, Civil Action No. 5:91–715 (JAC). *See* doc. # 239 in that action (appearance entered by Field on behalf of Raveh on November 2, 1993). In the *Bentley* case, the plaintiff, a private homeowner, sued (among others) Raveh, Field and Steiger, alleging common law fraud and violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, the Real Estate Settlement Procedures Act, 12 U.S.C. § 2610 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, and the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. § 42–110a *et seq.* In a Ruling dated November 10, 1993 on Raveh's motion to set aside the default which had entered against him, I observed that

 > [b]y his conduct and demeanor at various hearings ... Raveh has shown himself to be one of the most obviously deceptive and untrustworthy litigations I have encountered in fourteen years as a federal trial judge. His claims of ignorance or other disabilities appear to me to be part of a deliberate attempt to disrupt and delay these proceedings....

 At a hearing on damages, Magistrate Judge Thomas P. Smith independently found Raveh's testimony "unworthy of belief." He found Field's testimony unpersuasive as well. *See* Memorandum of Decision (filed Mar. 8, 1994)

(doc. # 259), at 5. Final judgment entered against Raveh in the *Bentley* action in an amount over $1,000,000, plus attorney's fees and costs. *See id.* at 8; doc. # 261.

2. *See* Defendant's Statement, Ex. 1 (Verified Petition).

3. *See id.* at ¶ 1; Plaintiff's Second Amended Complaint (filed Dec. 22, 1993) (doc. # 21) ("Complaint"), ¶ 1.

4. *See* Defendant's Statement, Ex. 1 (Verified Petition, *see* ¶ 24). The plaintiff vehemently denies this allegation, which, at least in part, appears to have motivated this action. *See* Complaint, ¶¶ 5–8. It is worth noting, however, that at one point in the *Bentley* action, *see* note 1, *supra*, Field similarly disavowed any connection with Israel Raveh. As noted above, Field ultimately represented Raveh in that case, and, to reiterate, Field and Raveh commenced this action together.

5. *See* Defendant's Statement, ¶ 24; Ex. 7 (cover letter, dated January 9, 1991 [sic], from Assistant Attorney General Kirton to Ms. Jacqueline Houser, Assistant Attorney General of the State of Connecticut). The defendant claims that she forwarded these materials in accordance with the frequent practice of her office when it becomes aware of potential misconduct in a sister state. *See id.* at ¶ 24. The plaintiff, on the other hand, "doubts Kirton was with [her] department long enough to know common practice and had no specific directive to perform such act." *See* Plaintiff's Objection to Material Facts Not in Dispute (filed Jan. 20, 1994) (doc. # 32) ("Plaintiff's Objection"), ¶ 15.

6. *See* Defendant's Statement, ¶ 13; Ex. 4 (January 13, 1992 press release entitled "News from Attorney General Robert Abrams" ["press release"]).

7. *See id.* at ¶ 14; Ex. 4 (press release).

the New York Supreme Court—was publicly available when the release was issued.[8]

Lila Kirton, the defendant here, is identified in the New York action as one of the three Assistant Attorneys General participating in the prosecution of the case.[9] The record in this action as it now stands suggests that the New York action is currently pending in the Supreme Court of the State of New York, the County of New York.[10]

After further investigation by the New York State Department of Law's Consumer Frauds and Protection Bureau ("Consumer Frauds and Protection Bureau") subsequent to the filing of the New York action, the People of the State of New York moved to join additional parties to the New York action, including Field.[11]

On November 5, 1992, the State of New York sent to the Connecticut Statewide Grievance Committee ("Statewide Grievance Committee") copies of the pleadings in the New York action.[12] The Fairfield Judicial District Grievance Panel ("Fairfield Grievance Panel") subsequently initiated an investigation of Field regarding the allegations contained in the New York action.[13] On May 5, 1993, the defendant attended a hearing on the matter before the Reviewing Panel of the Statewide Grievance Committee,[14] and, on November 18, 1993, the Fairfield Grievance Panel issued a decision to present Attorney

8. *Compare id.*, Ex. 4 (press release dated January 13, 1992), *with id.*, Ex. 1 (Verified Petition dated January 7, 1992).

9. *See id.* at ¶ 5; Ex. 1–3 (pleadings filed in the New York Action); Ex. 4 (press release).

10. *See id.* at ¶ 6.

11. *See id.* at ¶ 11; Ex. 2 (Motion for Leave to Amend the Verified Petition to Add Respondents in the New York action dated November 3, 1992 ["Motion to Add Respondents"]); Ex. 3 (Proposed Amended Verified Petition in the New York action dated November 3, 1992 ["Proposed Amended Verified Petition"]). According to the plaintiff, the Supreme Court of New York has denied the State's motion for joinder. *See* Plaintiff's Objection, ¶ 5. The defendant, on the other hand, claims that the matter is still pending. *See* Defendant's Statement of Material Facts, ¶ 11. It is worth noting here that the plaintiff has *submitted no evidence whatsoever to substantiate his claim,* while the defendant has provided an April 30, 1993 decision by New York State Supreme Court Justice Milton L. Williams, which held the matter in abeyance until the conclusion of a hearing, to be held by a Special Referee, on the issue of personal jurisdiction. With regard to Raveh and Steiger, Justice Williams entered judgment in favor of the State. *See id.,* Ex. 9. In addition, the defendant has provided a November 29, 1993 decision by Justice Williams, which denied the State's request to reargue the issue without a jurisdictional hearing. *See id.,* Ex. 10. This decision also denied Raveh's motion to vacate the judgment entered against him. In sum, the record here as it stands to date reveals that the State's motion to join Field to the New York action has not yet been decided and is currently awaiting the report of the Special Referee.

The plaintiff also suggests that the defendant seeks to add him to the New York action solely as retaliation for his filing this action. *See* Plaintiff's Request for Injunctive Relief (filed Jan. 13, 1994) (doc. # 28), at 1. It should be noted that

Field was identified as SCG's lawyer in the original Verified Petition in the New York action, which was filed long before Field and Raveh commenced this suit. *See* Defendant's Statement, Ex. 1 (Verified Petition dated January 7, 1992, *see* ¶ 24).

12. *See id.* at ¶ 25; Ex. 8 (cover letter, dated November 5, 1992, from Assistant Attorney General Kirton to Statewide Grievance Committee); Ex. 2, 3 (Motion to Add Respondents and Proposed Amended Verified Petition). The defendant claims that at the time such pleadings were forwarded to the Statewide Grievance Committee, they had already been filed in the New York action and were therefore publicly available. *See id.* at ¶ 26. The plaintiff, on the other hand, asserts that such materials were forwarded to the Grievance Committee prior to their having been filed in court. Plaintiff's Objection, ¶ 16. Again, the plaintiff has provided no evidence to support this claim or to rebut the record on this score—which indicates that the materials in question were submitted to the New York Supreme Court on November 3, 1992 and to the Statewide Grievance Committee on November 5, 1992. In any event, even if this material was forwarded to the Statewide Grievance Committee before having been officially filed in the New York action, the plaintiff has not persuasively explained why this would be relevant.

13. The action was assigned the docket number 92–0502. *See* Defendant's Statement, ¶ 27.

14. The defendant claims that her attendance was part of an ongoing investigation being conducted by the New York Bureau of Consumer Frauds and Protection. *See id.* at ¶ 30. The plaintiff, however, baldly asserts that "Kirton has no capacity in Connecticut at all, official or otherwise. She is not even an attorney in Connecticut. She attended solely as a member of the general public." *See* Plaintiff's Objection, ¶ 19.

Field to the Connecticut Superior Court for discipline. The record here as it now stands suggests that the Connecticut Superior Court has taken no action regarding the matter.[15]

On or about July 27, 1993, the plaintiff, along with Raveh, commenced this action in the Connecticut Superior Court for the District of Fairfield at Bridgeport.[16] The defendant removed the action to federal court on August 20, 1993. On August 24, 1993, Field filed a motion to remand the action to state court and a motion to join the defendant's lawyers and their firm to this action. He claimed that the defendant and her lawyers had conspired against him, and he argued that the motion to join, if granted, would destroy the diversity jurisdiction of this court.

On November 15, 1993, the court denied both motions. In its ruling, *see* doc. # 17, the court first noted that the original complaint's explicit invocation of 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution clearly satisfied the requirements of federal question jurisdiction. The court also observed that the original complaint's assertion of eleven counts—which alleged civil rights and equal protection violations, libel, slander, invasion of privacy, malicious prosecution, abuse of legal process, subornation of perjury, abuse of an official position, infliction of emotional distress, and civil conspiracy—clearly stated claims for more than $50,000, thereby conferring diversity jurisdiction on this court. Finally, the court found no compelling argument why Field should be permitted to join his opponent's lawyers to this action.

On November 18, 1993, only three days after the court declined to remand the case to state court, Raveh moved to withdraw all of his claims. The court granted this request

on November 29, 1993, and his claims were dismissed with prejudice.[17]

On December 22, 1993, Field filed a Second Amended Complaint ("Complaint"), which asserts a broad array of allegations against Assistant Attorney General Kirton ranging from libel to malicious prosecution to civil conspiracy. Specifically, the Complaint alleges, *inter alia,* that Kirton is maliciously prosecuting the New York action; that she defamed Field in statements made to the press; that she maliciously solicited witnesses to make claims against Field; that she maliciously conveyed her Proposed Amended Petition in the New York Action—which sought to add Field as a defendant—to the Connecticut Statewide Grievance Panel; that she knew that the affidavits supporting her motion to join Field as a defendant in the New York action were false; that she knowingly suborned perjury to obtain some of the material in the affidavits; and that she conspired with a witness at a grievance hearing before the Fairfield Grievance Panel.

Stated briefly, the Complaint asserts six counts. Count One, the only federal claim, is based on 42 U.S.C. § 1983. Count Two sets forth a claim of libel and invasion of privacy, and Count Three alleges malicious prosecution. Count Four alleges that Kirton abused the legal process by "inducing" the Connecticut Statewide Grievance Panel to file a grievance against plaintiff.[18] Count Five merely states that Kirton's acts "are against the public policy of the State of Connecticut and constitute a violation of its laws and its Constitution."[19] Finally, Count Six asserts a claim for "severe emotional injury."[20]

On January 13, 1994, the plaintiff filed a motion for injunctive relief, seeking to prohibit the defendant from "pursuing any further action of an official nature in the States of New York and Connecticut, since such action could be retaliatory in nature in response to this law suit."[21] On January 14,

15. *See* Defendant's Statement, ¶ 27.

16. *See* note 1, *supra.*

17. *See* note 1, *supra.*

18. *See Complaint,* ¶ 35.

19. *See id.* at ¶ 37.

20. *See id.* at ¶ 38.

21. *See* Plaintiff's Request for Injunctive Relief (filed Jan. 13, 1994) (doc. # 28), at 1. This request appears more narrowly tailored than the prayer for relief contained in the Complaint, which seeks "[a] temporary and permanent restraining order enjoining the [d]efendant Kirton

1994, the defendant moved for summary judgment. Finally, on January 18, 1994, the court stayed all discovery, pending resolution of these motions.

## DISCUSSION

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986) (Feinberg, C.J.), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Finally, " 'mere conclusory allegations or denials' " in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)).

### I.

█ Based upon a full review of the record, the defendant's motion for summary judgment must be granted. In order to state a successful claim under 42 U.S.C. § 1983, the plaintiff must first allege a deprivation of a *federal* constitutional or statutory right. *See Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 105–06, 110 S.Ct. 444, 447–49, 107 L.Ed.2d 420 (1989); *Maine v. Thiboutot*, 448 U.S. 1, 4–5, 100 S.Ct. 2502, 2504–05, 65 L.Ed.2d 555 (1980). Here, the plaintiff's vague and conclusory assertion in Count One of the complaint that the defendant violated his rights under 42 U.S.C. § 1983—without any indication whatsoever of the federal statutory or constitutional basis for these rights—is insufficient to support his federal civil rights claim.

█t is well settled that to state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of [federally protected] rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983.

*Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir.1987) (citations omitted). The court therefore finds that the plaintiff has failed to state a claim under 42 U.S.C. § 1983.

█ The plaintiff argues in his brief that he has a constitutional right "to pursue his occupation free from interference from [the d]efendant." [22] This argument is devoid of merit. It is worth repeating here that the complaint nowhere alleges any such right or the federal basis for such a right. More importantly, however, the plaintiff has provided no authority—and the court is unable to find any authority—to support the proposition that he has a right to be immune from the consumer fraud laws of the State of New York, from investigation by legitimate law enforcement authorities, or from review by the Statewide Grievance Panel or the Fairfield Grievance Panel, which were in fact

---

from further action against the plaintiff in any jurisdiction."

**22.** *See* Plaintiff's Objection to Motion for Summary Judgment: Brief (filed Jan. 20, 1994) (doc. #33), at 11.

created to review claims of misconduct by Connecticut attorneys.[23]

Moreover, even if the plaintiff does have a protected due process right to pursue his profession, there is nothing to suggest that the judicial proceedings before Justice Williams in the New York Supreme Court, as well as the administrative proceedings before the Fairfield Grievance Panel and any consequent judicial proceedings in the Connecticut Superior Court, have failed—or will fail—to provide ample process. In short, the court finds that the plaintiff has failed to state a cognizable federal claim; he therefore cannot sustain an action under § 1983.

This conclusion is firmly supported by an examination of Counts Two through Six of the complaint—which are based exclusively on state law. As the foregoing discussion illustrates, however, a violation of *state* law fails to state a claim under § 1983. *See Doe v. Connecticut Dept. of Child & Youth Services,* 911 F.2d 868, 869 (2d Cir.1990) (citing *Robison v. Via,* 821 F.2d 913, 922 (2d Cir. 1987)). Put simply, the mere invocation of § 1983, coupled only with state law allegations, cannot succeed.

## II.

 Even if the plaintiff had adequately articulated some federally protected right, this action would fail in any event. As an Assistant Attorney General of the State of New York whose duties involve the enforcement and prosecution of the State's consumer fraud laws, the defendant—to the extent that her actions were intimately associated with judicial proceedings in which she served as an advocate for the State—is protected by the doctrine of absolute immunity. *See Buckley v. Fitzsimmons,* —— U.S. ——,

——————, 113 S.Ct. 2606, 2613–15, 125 L.Ed.2d 209 (1993).[24]

 The plaintiff apparently relies on the general—and incontestable—proposition that absolute immunity attaches to the function and not to the official. *See id.* at ——, 113 S.Ct. at 2613. Put another way, a prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity. *See id.* at ——, 113 S.Ct. at 2615 (citations omitted). The Supreme Court

> ha[s] not retreated, however, from the principle that acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [her] role as an advocate for the State, are entitled to the protections of absolute immunity.

*Id.* Indeed, the Supreme Court has repeatedly recognized that

> 'the duties of the prosecutor in [her] role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom,' and are nonetheless entitled to absolute immunity.

*Id.* (quoting *Imbler v. Pachtman,* 424 U.S. 409, 431 n.33, 96 S.Ct. 984, 995–96 n.33, 47 L.Ed.2d 128 (1976)). The Court in *Imbler* specifically noted that "an out-of-court 'effort to control the presentation of [a] witness' testimony' was entitled to absolute immunity because it was 'fairly within [the prosecutor's] function as an advocate.'" *Id.* (quoting *Imbler,* 424 U.S. at 430, 96 S.Ct. at 994–95). Finally, once absolute immunity attaches to a particular governmental function, it is irrelevant how that function was carried

---

**23.** *See* Conn.Gen.Stat. § 51–90, regarding the creation and duties of grievance committees in the state of Connecticut.

**24.** In *Buckley v. Fitzsimmons,* the issue of absolute immunity specifically arose in the context of a criminal prosecution. *See* —— U.S. at ——, 113 S.Ct. at 2614 (referring to conduct which is "intimately associated with the judicial phase of the criminal process") (citations omitted). Our Court of Appeals has observed more generally that

> [a]bsolute immunity from liability has been accorded to a few types of government officials whose duties are deemed as a matter of public policy to require such protection to enable them to function independently and effectively, without fear or harassment. These include the President of the United States ..., judges ..., legislators ..., prosecutors ..., and high executive officers engaged in adjudicative or quasi-judicial functions....
>
> *Barrett v. United States,* 798 F.2d 565, 571 (2d Cir.1986) (citations omitted).

out. As our Court of Appeals has held, the immunity attaches to the function and "not to the manner in which it was performed." *Barrett v. United States,* 798 F.2d 565, 573 (2d Cir.1986).

 Under the circumstances presented here, where the defendant's actions were undertaken on behalf of the State of New York in an effort to enforce that State's consumer fraud laws and to aid the State of Connecticut in the enforcement of its laws, the court finds that the defendant is fully protected by the doctrine of absolute immunity.[25]

## III.

 In any event, assuming *arguendo* that the defendant is somehow not protected by absolute immunity, the court finds that she is protected by qualified immunity. Generally, government officials performing discretionary functions are accorded qualified immunity and thereby shielded from civil damages liability insofar as they do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), or "as long as their actions could reasonably have been thought consistent with the rights they are alleged to

have violated," *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). To reiterate, the violation of a clearly established *state-law* right will not defeat an assertion of qualified immunity. *See Doe v. DCYS,* 911 F.2d at 869 (quoting *Robison v. Via,* 821 F.2d at 921) (only violation of federally protected right can defeat a claim of qualified immunity).

Here, the complaint fails to define with any degree of particularity the federal right which was alleged to have been violated. In other words, it is not at all clear from the complaint what federal right is even at stake here, let alone that such a right was "clearly established."

Even if the court were to supplement the complaint with the arguments made in the plaintiff's brief, it is clear that any asserted right "to pursue his occupation free from interference from [the d]efendant"[26] was, to say the least, not clearly established at the time of its alleged violation. More accurately, the right asserted by the plaintiff fails even to state a colorable federal claim.

In sum, the contours of the right asserted by the plaintiff were by no means "sufficiently clear that a reasonable official would understand that what [s]he is doing violates

**25.** The only arguable exception involves the defendant's alleged communications with the press, which might appear to fall within the realm of those "administrative" functions which are not protected by absolute immunity. However, the particular circumstances underlying this case, and the attendant function performed by the defendant, should not be overlooked. Put simply, the New York action is a consumer fraud case which potentially involves a large number of homeowners in the public at large. The defendant's alleged contacts with the press can therefore be viewed as an attempt to reach potential witnesses and complainants who might not otherwise be aware of the pendency of the New York action and to procure further information related to the ongoing judicial proceedings in this matter. Such acts—"undertaken by a prosecutor in preparing for ... judicial proceedings [and] for trial, and which occur in the course of [her] role as an advocate for the State"—are entitled to the protections of absolute immunity. *See Buckley v. Fitzsimmons,* —— U.S. at ——, 113 S.Ct. at 2615. Moreover, the defendant is protected by qualified immunity in any event. *See* Part III, *infra.*

The plaintiff further claims that—since the defendant has no official capacity in the State of Connecticut—her asserted contacts with the Statewide Grievance Committee and the Attorney General of the State of Connecticut, as well as with witnesses involved in the proceedings against the plaintiff before the Fairfield Grievance Panel, are not protected by absolute immunity. This argument is without merit. First, inasmuch as the defendant's actions in this regard are closely connected with the ongoing investigation and proceedings in New York, the court finds that absolute immunity applies. Second, since the defendant's efforts clearly benefit the State of Connecticut in the enforcement of *its* rules and laws, the court similarly concludes that absolutely immunity attaches. Indeed, to hold that an Assistant Attorney General of one state cannot avail herself of absolute immunity when assisting in the initiation of and preparation for judicial or quasi-judicial proceedings in a sister state would greatly hinder interstate cooperation among law enforcement authorities—which is especially valuable in the investigation of matters that by their nature extend beyond state boundaries, such as consumer fraud.

**26.** *See* note 22, *supra.*

that right." *Anderson v. Creighton,* 483 U.S. at 639, 107 S.Ct. at 3039. In other words, the court finds that no reasonable jury could—under any arguable criteria—"conclude that it was objectively unreasonable for the defendant to believe that [s]he was acting in a fashion that did not violate an established federally protected right." *Robison v. Via,* 821 F.2d at 921. Accordingly, the plaintiff's § 1983 claim, contained in Count One of the complaint, must be dismissed.

## IV.

▇ Inasmuch as the remaining counts of the complaint are based exclusively on state law, the court could readily dismiss these claims by declining to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(c)(3).[27]

The Connecticut state law doctrine of sovereign immunity provides an additional ground for dismissal.

> The rule is well settled ... that a suit against an officer of a state as representing the state in action and liability, where the state is the real party against whom relief is sought, and where judgment for the plaintiff, *although nominally against the officer as an individual,* would operate to control the action of the state or subject it to liability, is barred.

*Fetterman v. University of Conn.,* 192 Conn. 539, 552, 473 A.2d 1176 (1984).[28]

Under the circumstances presented here, the court finds that this suit—"although nominally a claim against the officer as an individual"—is in fact a suit which "would operate to control the action of the state."

*See Fetterman,* 192 Conn. at 552, 473 A.2d 1176. The defendant is fully authorized by the State of New York to investigate consumer fraud, to enforce and prosecute New York's consumer fraud laws, to solicit affidavit testimony and witnesses, to file documents in court, to convey materials of public record to the authorities of neighboring states, to issue statements to and answer inquiries from the press regarding such materials, and to follow up on her investigation by attending related administrative proceedings. To subject her to suit for performing her official duties would open the door for disgruntled subjects of legitimate law enforcement investigations to sue the individual state officials assigned to their cases. Such suits would divert valuable time and energy away from such investigations, and would potentially discourage states from vigorously pursuing the enforcement of their laws. Stated briefly, the interest in the plaintiff to be free from investigation and suit is greatly outweighed by the interests of the state served by the sovereign immunity doctrine. Accordingly, the court holds that this suit is barred by the doctrine of sovereign immunity.

### A.

▇ The plaintiff's claim of libel in Count Two must be dismissed on other grounds as well. "Publication to the media of material that the media was independently entitled to view ... cannot provide a basis for a claim of defamation." *Kelley v. Bonney,* 221 Conn. 549, 576, 606 A.2d 693 (1992). Here, the January 13, 1992 press statement, for example—which does not even refer to the plaintiff by name—contains no information which

---

**27.** 28 U.S.C. § 1367(c) provides, in pertinent part, that the district courts

 may decline to exercise supplemental jurisdiction over a claim ... if—

 ....

 (3) the district court has dismissed all claims over which it has original jurisdiction....

**28.** The principle of sovereign immunity is deeply rooted in ancient common law and has been modified and adapted to the American concept of constitutional government. *Horton v. Meskill,* 172 Conn. 615, 623, 376 A.2d 359 (1977).

 The practical and logical basis of the doctrine is today recognized to rest ... on the hazard

"that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their control over their respective instrumentalities, funds, and property."

*Id.* at 624, 376 A.2d 359 (quoting Joseph D. Block, "Suits Against Government Officers and the Sovereign Immunity Doctrine," 59 *Harv. L.Rev.* 1060, 1061 (1946)). In light of the common roots and broad scope of the sovereign immunity doctrine, this court finds that the State of New York is equally shielded by its sovereign immunity.

cannot be gleaned from the Verified Petition which had already been filed, and which was therefore already publicly available, in the New York Supreme Court.[29] Furthermore, there is nothing to suggest that the media somehow lacked the ability to gain access, and to review independently, the Verified Petition.

Put simply, the plaintiff alleges that the defendants relayed certain defamatory statements to the press. However, these statements—including the claim that Field served as SCG's attorney[30]—are clearly set forth in the Verified Petition. As a matter of law, then, this information "cannot provide a basis for a claim of defamation." *See Kelley v. Bonney*, 221 Conn. at 576, 606 A.2d 693.

 Furthermore, any materials published by attorneys or officers of the court in the course of judicial or quasi-judicial proceedings are absolutely privileged. *Kelley v. Bonney*, 221 Conn. at 571, 606 A.2d 693; *Mozzochi v. Beck*, 204 Conn. 490, 494–95, 529 A.2d 171; *Petyan v. Ellis*, 200 Conn. 243, 245–46, 510 A.2d 1337 (1986). The effect of this privilege is that "damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously." *Petyan v. Ellis*, 200 Conn. at 246, 510 A.2d 1337. In short, the pleadings in the New York action cannot form the basis for a defamation claim. The defendant's conveyance of these materials to the Attorney General of the State of Connecticut and the Statewide Grievance Committee is similarly privileged—both because the material was published in the course of the New York proceedings (and was therefore independently

available to the media and to the Connecticut authorities for review) and because it provided, at least in part, the basis for the decision to initiate the quasi-judicial proceedings before the Fairfield Grievance Panel. *See Kelley v. Bonney*, 221 Conn. at 571, 606 A.2d 693 (any statement made as a requisite step in quasi-judicial proceedings is absolutely privileged); *Petyan v. Ellis*, 200 Conn. at 246, 510 A.2d 1337 (privilege applies in administrative proceedings which are quasi-judicial in character and extends to every step of such proceedings).

Accordingly, the plaintiff's claim that the defendant defamed him by providing the Connecticut Statewide Grievance Committee and the Attorney General of the State of Connecticut with the materials filed in the New York action must clearly fail.[31] Count Two of the complaint must therefore be dismissed on this additional and independent ground.[32]

### B.

The plaintiff's claim for malicious prosecution in Count Three of the complaint must similarly fail. Simply put, a successful claim of vexatious litigation or malicious prosecution requires, *inter alia*, that the proceeding complained of has terminated in the plaintiff's favor. *See Blake v. Levy*, 191 Conn. 257, 263, 464 A.2d 52 (1983); *McHale v. W.B.S. Corp.*, 187 Conn. 444, 447, 446 A.2d 815 (1982); *Vandersluis v. Weil*, 176 Conn. 353, 356, 407 A.2d 982 (1978). Here, the plaintiff can make no such showing. To reiterate, the record as it now stands indicates that the State's motion to join Field to the

---

29. *See* note 8, *supra*, and accompanying text.

30. *See* note 4, *supra*, and accompanying text.

31. The plaintiff asserts that the defendant never properly informed the Connecticut authorities that he was not a party to the New York action. *See Complaint*, ¶ 18–19. The materials, however, are clear on their face. Indeed, the Affirmation in Support of the Motion to Amend the Verified Petition to Add Respondents—if not clear by dint of its title—explicitly indicates that the State wished to add Field as a respondent. *See Defendant's Statement*, Ex. 2. Conversely, there is no indication that the defendant ever represented that Field was in fact a party to the New York action. As noted above, *see* note 11,

*supra*, the record here as it stands to date reveals that—despite Field's bald assertions to the contrary—the State's motion to add Field to the New York action has not been denied, but, rather, is awaiting the conclusion of a jurisdictional hearing.

32. The plaintiff's invasion of privacy claim, which is also asserted in Count Two, must likewise be dismissed. It should first be noted that the plaintiff has nowhere put forth any argument to support this claim. Second, as with the libel claim, this claim is directed at the release of information contained in the pleadings in the New York action. To reiterate, such materials are absolutely privileged, and the defendant is immune from damages liability as a result.

New York action has yet to be definitively resolved. Moreover, the Fairfield Grievance Panel has actually decided to present Field to the Connecticut Superior Court for discipline. In short, neither proceeding has concluded or has yielded a judgment in favor of the plaintiff. Indeed, insofar as the Fairfield Grievance Panel is concerned, it appears that the matter has been resolved *against* the plaintiff.

■ In any event, the Fairfield Grievance Panel's decision to present the plaintiff to the Connecticut Superior Court for discipline is certainly grounds for finding—at the very least—that the defendant had probable cause to investigate and prosecute the plaintiff. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cole,* 189 Conn. 518, 538, 457 A.2d 656 (1983). Inasmuch as the plaintiff must also show that the defendant acted without probable cause in order to prevail on a claim of malicious prosecution, *see Blake v. Levy,* 191 Conn. at 263, 464 A.2d 52; *McHale v. W.B.S. Corp.,* 187 Conn. at 447, 446 A.2d 815; *Vandersluis v. Weil,* 176 Conn. at 356, 407 A.2d 982, he cannot prevail. In sum, the plaintiff's claim for malicious prosecution must be dismissed as a matter of law on this separate ground.

### C.

■ In Count Four, the plaintiff alleges an abuse of legal process. Again, this claim cannot succeed. According to the Connecticut Supreme Court,

> the gravamen of the action for abuse of process is the use of 'a legal process ... against another *primarily* to accomplish a purpose for which it was not designed....' [T]he addition of 'primarily' is meant to exclude liability 'when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant.'

*Mozzochi v. Beck,* 204 Conn. at 494, 529 A.2d 171 (quoting Restatement (Second) of Torts, § 682 & cmt. b (1981)). Moreover, "[s]uch a cause of action must be reconciled with our responsibility to assure unfettered access to

our courts.... [W]e must ... take care not to adopt rules which will have a chilling and inhibitory effect on would-be litigants of justiciable issues." *Id.* at 494–95, 529 A.2d 171 (citations and internal quotation marks omitted).

Under the circumstances presented here—where judgment has entered in the New York action against Raveh and Steiger, where Raveh and Field participated in the *Bentley* action and commenced this action together, where the State's motion to add Field to the New York action and the Proposed Amended Verified Petition clearly present justiciable issues worthy of a jurisdictional hearing, where the Fairfield Grievance Panel has concluded that the allegations against Field have merit, and where this court is wary indeed of inhibiting both the State of New York and the State of Connecticut from investigating and prosecuting allegations of misconduct—the court finds that the plaintiff's claim for abuse of process cannot prevail.

■ The plaintiff's claim in Count Four must fail for another reason as well. With regard to the administrative proceedings in Connecticut, the decision to institute process against Field was made by the authorities in Connecticut, not by the defendant. Indeed, there is nothing on this record to suggest that the defendant even filed a complaint before the Statewide Grievance Committee. Put simply, it appears that the defendant did nothing more than advise the Connecticut authorities of the allegations made against Field in the New York action. Accordingly, a claim of abuse of process cannot be asserted against the defendant, even apart from the doctrine of sovereign immunity.

### D.

Count Five asserts merely that the defendant's actions "are against the public policy of the State of Connecticut and constitute a violation of its laws and its Constitution."[33] The plaintiff, however, has utterly failed to provide any support for such a claim. Specifically, he has not described what public

---

33. *See* Complaint, ¶ 37; note 19, *supra*.

policy has been breached, or what statutory or constitutional provision has been violated. Put simply, the plaintiff's sweeping and conclusory allegation in Count Five—devoid of any particulars—fails even to satisfy the liberal pleading requirements of Fed.R.Civ.P. 8(a).[34] Accordingly, Count Five must be dismissed.

### E.

■ Finally, Count Six sets forth a claim for the infliction of emotional distress. This claim is frivolous. To sustain such a claim in Connecticut, the plaintiff must show, *inter alia*, that the defendant's conduct was "extreme and outrageous"—namely, that it "exceed[ed] all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *DeLaurentis v. New Haven*, 220 Conn. 225, 266–67, 597 A.2d 807 (1991) (citations and internal quotation marks omitted). Under New York law, the plaintiff would similarly be required to show that the defendant's actions exceeded "all possible bounds of decency" and can be regarded as "atrocious" or "utterly intolerable in a civilized society." *Economu v. Borg-Warner Corp.*, 829 F.2d 311, 317 (2d Cir.1987) (citations and internal quotation marks omitted).

■ Under either standard, the plaintiff cannot even remotely suggest—without more than bare, unsupported allegations—that the defendant's actions rose to this level. The allegations against Field in the New York action were sufficiently meritorious to warrant a jurisdictional hearing and disciplinary proceedings before the Connecticut Superior Court. Put simply, the charge that the defendant has acted in a fashion beyond the bounds tolerated by a decent or civilized society is utterly unfounded. Accordingly, Count Six must also be dismissed on independent state law grounds.[35]

### V.

Finally, the court turns to the plaintiff's motion for injunctive relief. To reiterate, the

---

**34.** Fed.R.Civ.P. 8(a) requires, in part, "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."

**35.** The plaintiff claims that—because the court has suspended discovery in this action—it should not grant the defendant's motion for summary judgment. This claim is without merit. First, it should be noted that this action has been dismissed in its entirety solely on the basis of the complaint on several independent grounds—including *failure to state a colorable federal claim* under 42 U.S.C. § 1983, *see* Part I, *supra;* absolute immunity, *see* Part II, *supra;* qualified immunity, *see* Part III, *supra;* and pursuant to 28 U.S.C. § 1367(c)(3), see Part IV, *supra*.

In addition, while summary judgment *"normally* should not be granted before discovery is completed," *see* 6 Moore's Federal Practice, ¶ 56.15[5] at 56–308 n. 28 (1993 & Supp.1994) (emphasis added), this case clearly represents—and justifies—*the exception to the rule. Indeed,* to the extent that the court does rely on materials outside the complaint, it should be observed that the plaintiff has not produced any specific evidence even to show that further discovery would unearth a genuine triable issue. The only evidence submitted in opposition to the defendant's motion for summary judgment consists merely of vague, conclusory, and unsubstantiated allegations in two brief affidavits. In the plaintiff's affidavit, for example, he alludes to various newspaper articles, depositions, hearings, other legal actions, etc., but nowhere provides any copies, transcripts, pleadings, or court records. In addition, he nowhere provides any particulars to back up such statements as, "[t]he affidavit of Griffin was pure perjury, knowingly suborned by Kirton." *See* Plaintiff's Affidavit (attached to Plaintiff's Objection to Motion for Summary Judgment) (filed Jan. 20, 1994) (doc. # 31), ¶ 21. Put simply, a plaintiff is not "entitled to go to trial on the vague supposition that something might turn up." *See* 6 Moore's Federal Practice, ¶ 56.15[5] at 56–310 to 56–311.

Under the particular circumstances presented here, where the plaintiff's bald and sweeping allegations find no evidentiary support whatsoever, the court will not authorize a discovery fishing expedition and it will not allow the plaintiff to disrupt judicial proceedings before the New York Supreme Court and disciplinary proceedings before the Statewide Grievance Committee and the Connecticut Superior Court. Indeed, inasmuch as this action is directed in large part at those proceedings and the defendant's conduct therein, the plaintiff should present his claims to the tribunals presiding over those proceedings—which are still pending—and not to this court or in any other collateral proceeding.

Moreover, it bears noting that, on August 20, 1993, the Order on Pretrial Deadlines (*see* doc. # 2), set the discovery deadline at February 19, 1994. Discovery was suspended, however, on January 18, 1994—some five months after the plaintiff had notice of the discovery deadline, and only one month before the expiration of that deadline.

plaintiff requests that the court prohibit the defendant "from pursuing any further action of an official nature in the States of New York and Connecticut, since such action could be retaliatory in nature in response to this law suit."[36] Of course, inasmuch as the entire complaint has been dismissed with prejudice, the plaintiff's request for injunctive relief must be denied as moot. The request is also denied as utterly devoid of merit and unworthy of an evidentiary hearing.

The standards for preliminary injunctive relief in this Circuit are well established. The party seeking a temporary restraining order or a preliminary injunction must show a risk of irreparable harm *and* either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping in the movant's favor. *See, e.g., Johnson v. Kay*, 860 F.2d 529, 540 (2d Cir.1988); *McNeilab, Inc. v. American Home Products Corp.*, 848 F.2d 34, 37 (2d Cir.1988).

Based on the foregoing discussion, it is clear that the plaintiff has utterly failed to show a likelihood of success on the merits, or even that this case presents serious questions going to the merits to make them a fair ground for litigation. Nor has—or can—the plaintiff show that the balance of hardships tips in his favor. If his request is granted, the defendant will be enjoined from doing her job as an Assistant Attorney General of the State of New York who is charged with the important task of enforcing the State's consumer fraud laws. Such sweeping relief would undoubtedly cause great harm to the New York Attorney General's Office, as well as to the People of the State of New York. If the plaintiff's request is denied, however, the plaintiff will merely have to await the determinations—after full proceedings with an opportunity to participate—of the New York Supreme Court and the Connecticut Superior Court. In sum, the court finds that the plaintiff's request for injunctive relief lacks merit and therefore does not warrant a hearing of any kind.

**36.** *See* notes 11 and 21, *supra,* and accompanying text.

## CONCLUSION

Based upon a full review of the record, and for the reasons stated above, the defendant's motion for summary judgment (filed Jan. 14, 1994) (doc. # 24) is hereby GRANTED and the plaintiff's Request for Injunctive Relief (filed Jan. 13, 1994) (doc. # 28) is hereby DENIED. This action is therefore hereby DISMISSED with prejudice and without costs to any party. The Clerk shall CLOSE this case.

It is so ordered.