WILLIAM McHALE ET AL. *v.* W.B.S. CORPORATION ET AL.

SPEZIALE, C. J., PETERS, PARSKEY, ARMENTANO and SHEA, Js.

---

Argued April 6—decision released June 22, 1982

*Peter M. Ryan,* for the appellants (defendants).
*Carl R. Burns,* for the appellees (plaintiffs).

PETERS, J. In this case of malicious prosecution, the plaintiff Brian McHale recovered $5000 in damages from the defendants W.B.S. Corporation and Robert Sebastio.[1] After having unsuccessfully moved the trial court to set aside the verdict of the jury, the defendants have taken the present appeal in which they claim error in the court's charge to the jury.[2]

---

[1] Although the complaint originally included an additional plaintiff, William McHale, the father of the plaintiff Brian McHale, and an additional defendant, William B. Sheck, the president and chief executive officer of W.B.S. Corporation, these parties were removed from the case by the action of the trial court before the case was submitted to the jury. In addition, a second count in the complaint, alleging wilful injury to the plaintiff Brian McHale's reputation, was withdrawn by the trial court from consideration by the jury. No appeal has been taken from any of these rulings of the trial court.

[2] In their motion to set aside the verdict, the defendants claimed, in addition, that the issue of probable cause should not have been

The evidence adduced at the trial established the following facts. The plaintiff Brian McHale was an employee of the defendant W.B.S. Corporation in the early part of the fall of 1977. His immediate supervisor was the general foreman, the defendant Robert Sebastio. While still in the defendant's employ, the plaintiff borrowed one of the defendant's leaf blowers for his personal use; whether he had permission to do so was disputed. Shortly thereafter, the plaintiff availed himself of the opportunity to go into business for himself when his father purchased a leaf blower for him.

In late November, after the plaintiff had returned the W.B.S. leaf blower and had left the defendant's employ, the defendant Sebastio discovered that a leaf blower was missing from the W.B.S. storage garage. Sometime thereafter, one George Solokas, another W.B.S. employee who lived near the storage garage, told Sebastio that he had seen a person whom he knew as "Brian" pulling a leaf blower down the driveway "on a Sunday afternoon." Solokas, at trial, could not pinpoint the particular Sunday.

On December 14, 1977, Sebastio complained to Detective A. Arway of the Norwalk police department that there had been a robbery at the W.B.S. garage and that there was a witness to it. At Arway's request, Sebastio brought Solokas in to make a statement; Solokas then identified "Brian" as the plaintiff Brian McHale.

On the basis of this information, Arway applied for a warrant for the arrest of the plaintiff. The

submitted to the jury and that the jury's verdict was excessive in amount. Since these issues have not been briefed, we do not consider them.

plaintiff was arrested and tried for burglary in the third degree and larceny in the third degree. See General Statutes §§ 53a-103 and 53a-124. The plaintiff's criminal trial ended in a dismissal of the charges against him after one William Welsh testified that the defendant Sebastio had advised him not to tell the truth. Welsh had been a W.B.S. employee. In the present trial, the defendants disputed the accuracy of the Welsh testimony.

After dismissal of the criminal charges against him, the plaintiff instituted the action for malicious prosecution that is presently before us on this appeal. The defendants' sole claim of error is that the trial court failed to charge the jury properly with regard to a private citizen's immunity in providing information believed to be true to public officials entrusted with the responsibility for initiating criminal prosecutions; this claim was properly preserved by an exception duly taken at trial to the court's charge.

An action for malicious prosecution against a private person requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice. *Zenik* v. *O'Brien*, 137 Conn. 592, 595, 79 A.2d 769 (1951); *Brodrib* v. *Doberstein,* 107 Conn. 294, 296–98, 140 A. 483 (1928); *McGann* v. *Allen,* 105 Conn. 177, 185, 134 A. 810 (1926); 3 Restatement (Second), Torts (1977) § 653; W. Prosser, Torts (4th Ed. 1971) § 119. The law governing malicious prosecution

seeks to accommodate two competing and ultimately irreconcilable interests. It acknowledges that a person wrongly charged with criminal conduct has an important stake in his bodily freedom and his reputation, but that the community as a whole has an even more important stake in encouraging private citizens to assist public officers in the enforcement of the criminal law. 1 F. Harper & F. James, Torts (1956) § 4.11.

The policy of encouraging private citizens to assist in law enforcement is vindicated, in the law of malicious prosecution, by providing a limited immunity in the form of the first element that the plaintiff must prove to maintain his cause of action. A private person can be said to have initiated a criminal proceeding if he has insisted that the plaintiff should be prosecuted, that is, if he has brought pressure of any kind to bear upon the public officer's decision to commence the prosecution. *Fatone* v. *DeDomenico,* 161 Conn. 576, 577, 290 A.2d 324 (1971); *Zenik* v. *O'Brien,* supra, 596. But a private person has not initiated a criminal proceeding if he has undertaken no more than to provide potentially incriminating information to a public officer. In such a case, if the defendant has made a full and truthful disclosure and has left the decision to prosecute entirely in the hands of the public officer, he cannot be held liable for malicious prosecution. See *White* v. *Chicago, Burlington & Quincy Railroad,* 417 F.2d 941, 943 (8th Cir. 1969); *Fatone* v. *DeDomenico,* supra; *Brodrib* v. *Doberstein,* supra, 298; *Jensen* v. *Barnett,* 178 Neb. 429, 431, 134 N.W.2d 53 (1965); *Archer* v. *Cachat,* 165 Ohio St. 286, 287–88, 135 N.E.2d 404 (1956); *Rose* v. *Whitbeck,* 277 Or. 791, 797, 562 P.2d 188 (1977) and 278 Or. 463, 468–69, 564 P.2d 671 (1977); 3 Restatement (Sec-

ond), Torts (1977) § 653, comment g; W. Prosser, Torts (4th Ed. 1971) § 119, p. 837; 1 F. Harper & F. James, Torts (1956) § 4.3, p. 306.

The narrow issue in the case before us is to determine the extent to which falsity of the information provided to the public officer diminishes the private person's immunity. It is conceded that a private person cannot escape liability if he knowingly presents information that is false; false information necessarily interferes with the intelligent exercise of official discretion. The problem arises when the information proves to be false, although the informer in good faith believed it to be true. The defendants requested that the trial court instruct the jury that "the informer is not liable though the information proves to be false and his belief was one that a reasonable man would not entertain." This request to charge was taken verbatim from 3 Restatement (Second), Torts (1977) § 653, comment g. The trial court charged instead that the test was whether the informer "had reasonable grounds to believe [that the information] was true . . . ." That language is found, in dictum, in *Zenik* v. *O'Brien,* supra, 596, although, earlier, in *Brodrib* v. *Doberstein,* supra, 298, we had adopted a standard closer to that of the Restatement when we held that no action would lie against a person who "fully and fairly states all the material facts within his knowledge to the prosecuting attorney and in good faith abides by his decision as to whether they constitute probable cause for believing that a crime has been committed . . . ." We now affirm that the proper standard is that of *Brodrib* v. *Doberstein* and the Restatement. See *Gogue* v. *MacDonald,* 35 Cal. 2d 482, 487, 218 P.2d 542 (1950); *Pratt* v. *Kilborn Motors, Inc.,* 48 Ill. App. 3d 932,

936, 363 N.E.2d 452 (1977); *Newton* v. *Spence*, 20 Md. App. 126, 135–36, 316 A.2d 837 (1974); *Renda* v. *International Union, UAW*, 366 Mich. 58, 84, 114 N.W.2d 343 (1962); *Epling* v. *Pacific Intermountain Express Co.*, 55 Ohio App. 2d 59, 62, 379 N.E.2d 239 (1977).

The trial court was therefore in error in refusing to instruct the jury in accordance with the defendants' request to charge. In our judgment, a proper concern for private assistance to public law enforcement officers requires immunity from liability for malicious prosecution for the citizen who, in good faith, volunteers false incriminating information. To impose upon such a citizen the burden of having his conduct measured, retrospectively, by the standard of a reasonable person, would necessarily have a chilling effect on the willingness of a private person to undertake any involvement in the enforcement of the criminal laws.

In reaching this decision, we emphasize that we are addressing only one element of the cause of action for malicious prosecution. Our adoption of a good faith standard is limited to the issue of the defendants' initiation of criminal proceedings. We recognize that a person who has taken a more vigorous role, who has insisted that criminal proceedings go forward, has automatically "initiated" criminal proceedings. Once the initiation threshold is crossed, greater involvement signals greater risks. The liability of any person who has initiated criminal proceedings depends upon whether he has acted with probable cause, with "the knowledge of facts sufficient to justify a reasonable person in the belief that there are reasonable grounds for prosecuting an action." *Vandersluis* v. *Weil*, 176 Conn.

353, 356, 407 A.2d 982 (1978); *Zenik* v. *O'Brien,* supra, 597. Today's decision does not alter this well-settled law of probable cause.

Our decision, furthermore, is not an adjudication of the merits of the litigation between the present parties. The evidence at trial was in conflict both as to the extent of the defendants' involvement in the plaintiff's criminal prosecution and as to their good faith. Only a new trial, upon proper instructions, can resolve these and other factual disputes.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.