[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The instant proceeding sounds in tort for malicious prosecution founded upon the allegation that the previous criminal complaints made by Mieczslaw Gubernat and Jolanta Gubernat (hereinafter "the defendants") were false and unsupported by probable cause. The plaintiff asserts in the first count that as a result of statements made by the defendants on April 2, 1988, he was arrested for committing a crime of criminal mischief in the third degree in violation of Sec. 53a-117a of the General Statutes. The specification in support of the crime was that he damaged fence posts belonging to the defendants. This charge was subsequently DISMISSED. Emphasis supplied.) The plaintiff recites in count two that as a result of other statements made by the defendants on May 1, 1988, he was arrested for committing the crime of threatening in violation of Sec. 53a-62. The predicate for that allegation was a threat to Mieczslaw Gubernat in which a shovel was utilized. He was ACQUITTED by a jury.
In both counts he contends, inter alia, (1) that the complaint and charges which supported his subsequent arrest were in fact false, and there was no reasonable or probable cause for the prosecution, (2) that the defendants made the complaint and charges from malice, and (3) that the arrests and subsequent proceedings caused him to expend large sums of money on his defense, in addition to causing him humiliation, emotional distress and lost employment opportunities. CT Page 10579
A motion for summary judgment shall be granted "`if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Connell v. Colwell, 214 Conn. 242, 246 (quoting Zichichi v. Middlesex Memorial Hospital, 204 Conn. 399, 402. A material fact is simply a fact which will make a difference in the result of the case. Genco v. Connecticut Light Power Co.,7 Conn. App. 164, 167. The burden of proof is on the moving party. The facts presented must be viewed in the light most favorable to the party opposing the motion. State v. Goggin,208 Conn. 606, 616. "To satisfy his burden, the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Fogarty v. Rashaw, 193 Conn. 442,445 (quoting Dougherty v. Graham, 161 Conn. 248, 250). Issue finding, rather than issue determination, is the key to the procedure. Yanow v. Teal Industries, Inc., 178 Conn. 262,269. The Supreme Court has set forth the elements a plaintiff required to prove in an action for malicious prosecution in addition to examining the policy behind the action.
 An action for malicious prosecution against a private person requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice. [Citations omitted.] The law governing malicious prosecution seeks to accommodate two competing and ultimately irreconcilable interests. It acknowledges that a person wrongly charged with criminal conduct has an important stake in his bodily freedom and his reputation, but that the community as a whole has an even more important stake in encouraging private citizens to assist public officers in the enforcement of the criminal law. [Citations omitted.]
 The policy of encouraging private citizens to assist in law enforcement is vindicated, in the law CT Page 10580 of malicious prosecution, by providing a limited immunity in the form of the first element that the plaintiff must prove to maintain his cause of action. A private person can be said to have initiated a criminal proceeding if he has insisted that the plaintiff should be prosecuted, that is, if he has brought pressure on any kind to bear upon the public officer's decision to commence prosecution. [Citations omitted.] But a private person has not initiated a criminal proceeding if he has undertaken no more than to provide potentially incriminating information to a public officer. In such a case, if the defendant has made a full and truthful disclosure and has left the decision to prosecute entirely in the hands of the public officer, he cannot be held liable for malicious prosecution. [Citations omitted.]
McHale v. W.B.S. Corporation, 187 Conn. 444, 447-48. (Emphasis added.)
In a coordinate decision on a similar motion, the court found that upon being terminated from his employment, the plaintiff ignored a supervisor's request to leave the defendant's premises. He was subsequently arrested for refusing further requests to leave the premises issued by officers of the Thomaston Police Department. He was charged with breach of the peace and he ultimately pleaded, inter alia, malicious prosecution. In granting the defendants' motion for summary judgment, the court noted that:
 The defendants have included the police report and affidavits of Police Officers . . . concerning the arrest of the plaintiff. Both Officers state in their affidavits that the plaintiff's arrest for breach of the peace was based on his failure to leave Summit's premises after being directed to do so by the Officers . . . The Officers further state that the arrest was not done at the direction or request of [defendant supervisor] Mucciaro. Therefore, the defendants' motion for summary judgment is granted . . . in that there is no genuine issue of material fact.[1] Lawrence v. Summit Corporation of America, 8 CSCR 402, 403-04.
CT Page 10581
The defendants argue that they did not procure the institution of criminal proceedings against the plaintiff, nor were their actions a determining factor in the police officers' decision to arrest, or the State's decision to prosecute. They also contend that since the plaintiff has failed to allege the foregoing element of malicious prosecution in his complaint, and since he has produced evidence that the defendants procured the institution of criminal proceedings that the motion should be granted. They conclude their attack on the complaint by saying that there is no genuine issue of material fact that there was probable cause for the defendants to believe the plaintiff committed the acts for which he was tried.
The defendants have submitted substantial documentation in support of their motion including five affidavits. The first set forth the following facts over signature and oath of Mieczslaw Gubernat.[2] A second affidavit is that of Jolanta Gubernat and it replicates that of her husband, with the exception of the events of the May 1, 1988 threatening incident.[3] A third affidavit submitted is that of the State's Attorney who represented the state in the criminal proceeding. A fourth submission was the affidavit of Gary Dinho, one of two Danbury Police officers who responded to the May 1, 1988 call from Mieczslaw Gubernat.[4] The last affidavit offered is that of Brian Gantert, the second Danbury Police officer who, along with Officer Dinho, responded to the May 1, 1988 call from defendant, Mieczslaw Gubernat. It is a duplicate of Officer Dinho's.[5] The defendants' documentation also includes several exhibits previously introduced as evidence. Among those exhibits are various police reports detailing not only the April 2, 1988 fence post incident, but other incident reports regarding previous disputes between the two parties.
The plaintiff's counter-affidavit[6] in opposition to the defendants' motion for summary judgment offered two pages of transcript which hardly serves to illuminate as to why the photograph did not become part of the evidence.
 The law is clear that in order to satisfy the element of initialing or procuring the arrest of the plaintiff, there must be evidence that the acts of the defendant were the determining factor in the officer's or prosecutor's decision to make an arrest. It is not sufficient to show that an act CT Page 10582 of the defendant caused the police officer to make an arrest, although in this case all the defendant did was cause the police to come to the premises.
Martino v. Botteiller, Superior Court, Judicial District of New Haven at New Haven, No. 309186 (February 16, 1993, Hadden, J.).
The plaintiff has not alleged (much less proved through his counter-affidavit) the first element required for an action for malicious prosecution, i.e., that the defendants in this case initiated or procured the institution of criminal proceedings against him. Conversely, the defendants, as did the defendants in Lawrence v. Summit Corporation of America, supra, filed the statements of five different affiants, two of which were Danbury Police Officers, who state that the defendants did not pressure anyone to arrest the plaintiff. The actions taken by the defendants in the present case fall well within the parameters of the rule as set forth in McHale v. W.B.S. Corporation, 187 Conn. 444, 446 A.2d 815 (1982): if a private person, in this case the defendants, have not initiated a criminal proceeding and have undertaken no more than to provide in a truthful manner potentially incriminating information to a public officer and have left the decision to prosecute entirely in the hands of that public officer, then the defendants cannot be held liable for malicious prosecution.
Not insignificant is the denial of the plaintiff's application for a prejudgment remedy (Fuller, J.) wherein the court held that "it has not been shown that the defendants did anything more than suggest to the police that they suspected the plaintiff was the person who did the act which resulted in the criminal mischief charge. The police did their own investigation from which a court concluded there was probable cause to arrest the plaintiff on that charge."[7] The fact that the police mounted their own investigation is corroborated by the two police officers. Therefore, the acts of the defendants in summoning the police officers to the premises were not the determining factors in the officers' or for that matter the State's Attorney's decision to arrest and prosecute the plaintiff.
Of equal importance is the third essential element, a lack of probable cause for the criminal charges. Probable CT Page 10583 cause is more than suspicion. "There must be facts and circumstances within the officer's knowledge . . . sufficient to justify the belief of a reasonable person that an offense has been or is being committed. State v. Velez, 215 Conn. 667,672. In a malicious prosecution action, "[t]he plaintiff bears the burden of proving that the defendant had no reasonable basis for instituting the criminal proceeding." Garson v. Stop Shop Supermarket Co., Inc., Superior Court, Judicial District of New Haven at New Haven, No. 313556 (February 5, 1993, Vertefeuille, J.). In this case, three different affiants, Diamond, Dinho and Ganreft, believed probable cause existed that the plaintiff threatened the defendants. Returning to the denial of the plaintiff's application for a prejudgment remedy, the court stated that "there is inadequate evidence of lack of probable cause for initiating both prosecutions."[8] The fact that the jury found the plaintiff not guilty certainly does not prove want of probable cause, and is of no moment to the present action.
The plaintiff has failed to meet his initial burden of proving that the defendants had no reasonable basis for instituting criminal charges. He has offered nothing other than assertions in his counter-affidavit that six people could attest to his whereabouts regarding the threatening incident. IF taken as true, this evidence would go to the weight of the evidence admitted against the defendants at trial, and not to the sufficiency of whether affidavits submitted to a neutral and detached magistrate established probable cause, where the standard is less demanding than that which focuses on "whether there has been a prima facie showing of criminal activity." State v. Heinz, 193 Conn. 612, 617. (Emphasis supplied.) The court notes that the plaintiff's statement in his affidavit that a picture did not depict him attacking the defendant with a shovel, is nothing more than a de minimis fact which would again go to the merits of the action should it go to trial, and is tangential at best to the issue of probable cause. The inadmissibility of a picture, for whatever reason, at the trial stage of a cause, is wholly irrelevant to the plaintiff's pleading and/or proving the elements of a malicious prosecution in a later action such as this.
The defendant has satisfied this court that there is no genuine issue of material fact with respect to two of the elements necessary to prove a malicious prosecution action. Quite simply, the plaintiff has failed to meet his burden of CT Page 10584 proof. The motion for summary judgment is, accordingly granted.
Moraghan, J.
DEFENDANT'S EXHIBIT F
ALL-STATE LEGAL SUPPLY CO.
DOCKET NO. CV 92 310935 S : SUPERIOR COURT ROBERT L. WOLF : JUDICIAL DISTRICT OF DANBURY vs. : AT DANBURY MIECZSLAW GUBERNAT, ET AL : JULY 29, 1993
AFFIDAVIT
The undersigned being duly sworn, deposes on oath and CT Page 10585 states:
1. I am over the age of eighteen years and have independent knowledge of all the items contained in this affidavit and understand the meaning of an oath.
2. I am the defendant in the above-captioned action.
3. I reasonably believe that the plaintiff had cut down our new fence posts based on the following:
 a. The plaintiff's attorney sent my wife and I a letter stating that the construction of our new fence increased the waterflow problem on the plaintiff's property and encroached on Snug Harbor Drive to the detriment of the plaintiff's property.
 b. Several incidences had occurred before our new fence posts were cut down between Dr. Robert Wolf and ourselves which led me to believe that Dr. Wolf cut down our fence posts.
 c. As a result of the letter from the plaintiff's attorney, and my knowledge of the plaintiff's other violent altercations with other neighbors, I reasonably believed that it was the plaintiff who had cut down our new fence posts.
4. I reported the cut fence posts to the Danbury Police Department with my wife, Jolanta Gubernat.
5. I, in no way, pressured the Danbury Police Department to arrest the plaintiff for cutting down the fence posts.
6. Nor did I request that the plaintiff be prosecuted for cutting down the fence posts.
7. Also, I never requested nor pressed the prosecuting attorney to initiate a criminal action against the plaintiff for cutting down the fence posts.
8. The plaintiff threatened me with a shovel raised above his head on May 1, 1988 in my driveway.
9. I reported this incident to the Danbury Police CT Page 10586 Department.
10. I did not, in any way, request or pressure the Danbury Police to arrest the plaintiff for the incident on May 1, 1988.
11. Nor did I, in any way, pressure the prosecuting attorney involved in this case to prosecute the plaintiff for the incident on May 1, 1988.
BY: MIECZSLAW GUBERNAT
STATE OF NEW YORK)) ss: COUNTY OF KINGS )
SUBSCRIBED AND SWORN TO before me this 12 day of August, 1993.
BY: PETER MICHAEL MORAN
 Notary Public My Commission Expires: 5-31-95
 PETER MICHAEL MORAN Notary Public, State of New York No. 4657124 Qualified in Nassau County Commission Expires May 31, 1995
 DEFENDANT'S EXHIBIT G
ALL-STATE LEGAL SUPPLY CO.
DOCKET NO. CV 92 310935 S : SUPERIOR COURT ROBERT L. WOLF : JUDICIAL DISTRICT OF DANBURY vs. : AT DANBURY MIECZSLAW GUBERNAT, ET AL : JULY 29, 1993
AFFIDAVIT
The undersigned being duly sworn, deposes on oath and states:
1. I am over the age of eighteen years and have independent CT Page 10587 knowledge of all the items contained in this affidavit and understand the meaning of an oath.
2. I am the defendant in the above-captioned action.
3. I reasonably believe that the plaintiff had cut down our new fence posts based on the following:
 a. The plaintiff's attorney sent my husband and I a letter stating that the construction of our new fence increased the waterflow problem on the plaintiff's property and encroached on Snug Harbor Drive to the detriment of the plaintiff's property.
 b. Several incidences had occurred before our new fence posts were cut down between Dr. Robert Wolf and ourselves which led me to believe that Dr. Wolf cut down our fence posts.
 c. As a result of the letter from the plaintiff's attorney, and my knowledge of the plaintiff's other violent altercations with other neighbors, I reasonably believed that it was the plaintiff who had cut down our new fence posts.
4. I reported the cut fence posts to the Danbury Police Department with my husband, Mieczslaw Gubernat.
5. I, in no way, pressured the Danbury Police Department to arrest the plaintiff for cutting down the fence posts.
6. Nor did I request that the plaintiff be prosecuted for cutting down the fence posts.
7. Also, I never requested nor pressed the prosecuting attorney to initiate a criminal action against the plaintiff for cutting down the fence posts.
BY: JOLANTA K. GUBERNAT
STATE OF NEW YORK)) ss: COUNTY OF KINGS )
SUBSCRIBED AND SWORN TO before me this 12 day of August, CT Page 10588 1993.
BY: PETER MICHAEL MORAN
 Notary Public My Commission Expires: 5-31-95
 PETER MICHAEL MORAN Notary Public, State of New York No. 4657124 Qualified in Nassau County Commission Expires May 31, 1995
 DEFENDANT'S EXHIBIT I
ALL-STATE LEGAL SUPPLY CO.
DOCKET NO. CV 92 310935 S : SUPERIOR COURT ROBERT L. WOLF : JUDICIAL DISTRICT OF DANBURY vs. : AT DANBURY MIECZSLAW GUBERNAT, ET AL : JULY 29, 1993
AFFIDAVIT
The undersigned being duly sworn, deposes on oath and states:
1. I am over the age of eighteen years and have independent knowledge of all the items contained in this affidavit and understand the meaning of an oath.
2. I am a police officer with the Danbury Police Department.
3. I responded to a call from Mieczslaw Gubernat on Old Snug Harbor Road on May 1, 1988.
4. On that date, Mr. Gubernat told me that he had been threatened by his neighbor, Dr. Robert Wolf, with a shovel when he tried to drive up his own driveway.
5. I took a statement from Mr. Gubernat, conducted my own investigation, and felt that probable cause existed that Dr. CT Page 10589 Robert Wolf had in fact threatened Mr. Gubernat.
6. Mr. Gubernat did not pressure me in any way to arrest Dr. Robert Wolf.
BY: GARY MARTIN DINHO
STATE OF CONNECTICUT)) ss: COUNTY OF FAIRFIELD )
SUBSCRIBED AND SWORN TO before me this 2nd day of August, 1993.
BY:
 Notary Public My Commission Expires: March 31, 1994
 DEFENDANT'S EXHIBIT J
ALL-STATE LEGAL SUPPLY CO.
DOCKET NO. CV 92 310935 S : SUPERIOR COURT ROBERT L. WOLF : JUDICIAL DISTRICT OF DANBURY vs. : AT DANBURY MIECZSLAW GUBERNAT, ET AL : JULY 29, 1993
AFFIDAVIT
The undersigned being duly sworn, deposes on oath and states:
1. I am over the age of eighteen years and have independent knowledge of all the items contained in this affidavit and understand the meaning of an oath.
2. I am a police officer with the Danbury Police Department.
3. I responded to a call from Mieczslaw Gubernat on Old Snug Harbor Road on May 1, 1988.
4. On that date, Mr. Gubernat told me that he had been CT Page 10590 threatened by his neighbor, Dr. Robert Wolf, with a shovel when he tried to drive up his own driveway.
5. I took a statement from Mr. Gubernat, conducted my own investigation, and felt that probable cause existed that Dr. Robert Wolf had in fact threatened Mr. Gubernat.
6. Mr. Gubernat did not pressure me in any way to arrest Dr. Robert Wolf.
BY: BRIAN GANTERT
STATE OF CONNECTICUT)) ss. COUNTY OF FAIRFIELD )
SUBSCRIBED AND SWORN TO before me this 3d day of August, 1993.
BY:
 Notary Public My Commission Expires: March 31, 1993
DOCKET NO. CV92-310935S : SUPERIOR COURT ROBERT L. WOLF : J.D. OF DANBURY vs. : AT DANBURY MIECZSLAW GUBERNAT, ET AL : OCTOBER 26, 1993
 COUNTER AFFIDAVIT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
The undersigned being duly sworn deposes on oath and states:
1. I am over the age of 18 years and have independent knowledge of all the items contained in this affidavit and understand the meaning of an oath.
2. I am the plaintiff in the above-captioned action.
3. There is a genuine issue of fact to be determined by the trier and that is the motive and veracity of Mieczslaw Gubernat and his wife concerning my arrest for threatening the Defendant Mieczslaw Gubernat, for which I was acquitted by a jury on February 2, 1990.
4. During the course of the aforementioned trial leading to my CT Page 10591 acquittal, the Defendant Gubernat stated that he had a picture depicting myself with a shovel in my hand attacking him.
5. Attached hereto is page 77 and page 84 of the transcript of the trial whereby the picture was not admitted into evidence for the reason that it did not depict me with a shovel attacking him. That is the first prevarication which I am directing this court to consider.
6. During the course of the trial, the Defendant Gubernat made certain statements and allegations which were inconsistent with his written statement. Because testimony did not parallel the written statement, Judge Stodolink, during the course of the trial, admitted the statement into evidence. Attached are copies of the transcript of the trial, pages 129 through 135.
7. Paragraph 3A of the affidavit of Mieczslaw Gubernat dated July 29, 1993 is a lie and a misrepresentation. A letter was not sent by my attorney proposing the construction of a new fence. My attorney contacted the Defendant concerning creation of a ditch which resulted in a water flow problem and damage to my property.
8. A claim was filed against the Defendant Gubernat for such damage to my property, and his insurance company paid me the sum of $6,000.00. (See page 92 of the Transcript whereby the issue of a letter concerning a water problem was sent to the Defendant Gubernat.)
9. There are at least six people, some of whom testified in the criminal proceedings which resulted in my acquittal, that I was not outside of my house during the period of time that the Defendant Gubernat accused me of threatening him with a shovel. Those people will testify in the instant case as they did in the criminal case that I was present with them, entertaining them in my home.
10. I have filed with the Danbury Police approximately 40 to 50 complaints involving misconduct by the Defendants Gubernat toward myself and my family.
11. The Defendant Gubernat has also filed complaints against me.
12. My family has lived at Snug Harbor Drive in the very house in which I presently reside for many, many years. Until the arrival of the Gubernats, there were no problems whatsoever. Since his arrival, there has been nothing but problems.
13. Numerous incidents of conflict and controversy have given rise to CT Page 10592 a great deal of malice towards me by the Defendant Gubernat together with his absurd allegations that I attacked him or cut down his fence post.
Robert L. Wolf
STATE OF CONNECTICUT SS. Waterbury COUNTY OF NEW HAVEN
Subscribed and sworn to before this 27th day of October, 1993.
 Commissioner of the Superior Court Notary Public My Commission expires:
CERTIFICATION
This is to certify that a copy of the foregoing was this day mailed to all counsel of record and pro se parties, by U.S. Mails, postage prepaid, or hand-delivered to:
McNamara and Kenney, P.O. Box 8187 Brewster Station, Bridgeport, Ct 06605.
Paul J. Yamin