[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The issue in this case is whether the plaintiffs, Peter Holmes and his wife, Patricia A. Holmes, proved that Peter Holmes' mother, the defendant, Ann S. Holmes, engaged in malicious prosecution in urging the criminal arrest of her son for larceny of certain rental payments. In the first count of their three count complaint, the plaintiffs allege that Peter Holmes was part owner and manager of premises located at 18 Fairfield Avenue in Norwalk, and collected rent from these premises during the first six months of 1990; that the defendant signed an affidavit charging Peter Holmes with embezzlement from an entity called Holmes Estates, Inc., which had been dissolved CT Page 6833 in 1985; that as a result of his mother's affidavit he was arrested for third degree larceny; that thereafter the prosecutor nolled these criminal charges; that the charges had been made maliciously, without probable cause and with improper motives; and that his mother's conduct violated General Statutes §42-110b, the Connecticut Unfair Trade Practices Act (CUTPA). In the second count, the plaintiff Patricia Holmes alleges loss of consortium. In the third count the plaintiffs claim that the defendant committed extortion in violation of General Statutes §§ 53a-51 and 53a-119(5)(d). In their prayer for relief, the plaintiffs seek compensatory and exemplary damages and attorney's fees.[1]
In addition to denying the material allegations of the complaint, the defendant filed a number of special defenses, including an assertion that the plaintiffs' action is barred by General Statutes § 52-577, § 52-584 and §42-110g(f)[2]; that the action is barred by res judicata and collateral estoppel because Peter Holmes' claim of a joint venture was rejected in Holmes v. Holmes, supra, 32 Conn. App. 317; that the plaintiffs lacked clean hands; that probable cause for Peter Holmes' arrest had been determined by a judge of the Superior Court and by the states attorney's office; and that the defendant, in filing her affidavit, acted pursuant to the advice of an attorney.
The case was referred to Attorney Trial Referee W. James Cousins, in accordance with General Statutes § 52-434(a)(4) and Practice Book § 428 et seq. The attorney trial referee conducted a trial and then filed his report containing the following findings of fact: (1) that in 1986, after Holmes Estates, Inc. had been dissolved by the state, Ralph Holmes and his son, the plaintiff Peter Holmes, began converting an apartment building located at 18 Fairfield Avenue, Norwalk, to a condominium form of ownership; (2) that all the units in this condominium were sold, except for six units which were rented, and Peter Holmes managed these units and collected the rent; (3) that after her husband died, the defendant wrote to the tenants at 18 Fairfield Avenue and told them to send rent to Holmes Estates, Inc., in care of her attorney; (4) that on December 28, 1989, Peter Holmes commenced a civil action in this court (CV 90 105808) against his mother, as more fully described previously in footnote 1; (5) that the plaintiff also collected rent from the tenants at that address for the months of February and March, 1990, which he deposited in a bank account under the name of CT Page 6834 "Peter Holmes d/b/a Holmes Estates"; (6) that the plaintiff wrote to the defendant's attorney advising him that the rent was being held for "maintenance" and "painting" only; (7) that on March 8, 1990, the defendant signed an affidavit stating that her son had collected the rents "without any right or entitlement" and had "stolen $1,875" in each of two months "from Holmes Estates, Inc;" (8) that the sole motivation of the defendant in signing the affidavit was to induce the police to arrest her son; (9) that the defendant did not make a full and fair disclosure to the Norwalk police because she did not advise them that a civil suit was pending, the purpose of which was to determine the rightful ownership of the real estate in Ralph Holmes' estate, or that Peter Holmes had sent her a letter saying he was holding the rents for maintenance and painting only; (10) that the defendant did not reasonably believe in the existence of sufficient facts to justify the claim in her affidavit that the plaintiff had committed larceny; (11) that the defendant caused this affidavit to be delivered to the Norwalk Police who, without further investigation, obtained a warrant for the arrest of the plaintiff for two counts of third degree larceny, and thereafter the plaintiff was arrested, fingerprinted, photographed, and held temporarily pending posting of a $1,000 bond; (12) that the state's attorney's office and the judge who signed the warrant both relied exclusively on the defendant's affidavit as the Norwalk Police did not conduct any investigation of the defendant's charges; (13) that the defendant subsequently stated to the state's attorney's office that she would withdraw the criminal complaint against her son if he provided a full accounting of the rents and expenditures, which Peter Holmes thereafter provided; (14) that Peter Holmes' claims of a joint venture had reasonable support because he had worked with his father for many years in the real estate business and had jointly signed a mortgage note for one of the other buildings owned by his father; (15) that the plaintiff refused to concede probable cause; (16) that the prosecutor nolled the charges; and (17) that in Holmes v. Holmes, supra, the Appellate Court upheld the trial court decision that the plaintiff had failed to establish that he had engaged in a joint venture with his father and was therefore entitled to one-half of the assets of the estate.
The attorney trial referee reached the following conclusions as a result of his findings of fact: (1) that the plaintiff Peter Holmes had proved his allegation that the defendant is liable to him for malicious prosecution because: (a) the defendant initiated criminal proceedings against him; (b) the criminal CT Page 6835 proceedings terminated in favor of Peter Holmes by virtue of the prosecutor's nolle of the charges; (c) the defendant acted without probable cause; and (d) in filing her affidavit, the defendant acted with malice as her main motive was to gain an advantage in the civil suit brought against her by her son; (2) that "probable cause" means that there had to be a reasonable belief on the part of the defendant that the plaintiff Peter Holmes was wrongfully appropriating her property and that he had the felonious intent to deprive the rightful owner of such property; (3) that the defendant lacked probable cause to make such a charge, as "the ownership rights to the property were in good faith dispute in an appropriate civil forum"; (4) that the doctrine of collateral estoppel does not apply because the issue of whether Peter Holmes feloniously attempted to deprive his mother of the rent payments in issue was not litigated in the civil suit; (5) that probable cause cannot be found simply because the prosecutor and judge signed an arrest warrant, as such warrant was based solely on the defendant's affidavit; (6) that the defendant did not establish that her actions were based on the advice of counsel; (7) that the plaintiff failed to prove that his mother violated CUTPA in that no consumer relationship existed between them; (8) that the plaintiff did not prove his allegation of extortion as the two criminal statutes referred to in the third count of the complaint do not provide for a civil remedy; (9) that Patricia Holmes did not prove that her marital difficulties were caused by the defendant's actions; and (10) that Peter Holmes had proved that he had suffered mental anguish as a result of his arrest, and should be awarded $30,000, plus attorney's fees of $5,000 for defense of the criminal action, and $20,000 for the prosecution of this action, for a total recommended judgment of $55,000.[3]
The plaintiffs did not thereafter file any motions with respect to the attorney trial referee's report.[4] The defendant also did not move, pursuant to Practice Book § 438, to correct the referee's report, nor did she file exceptions to the report, Practice Book § 439. The defendant did, however, file objections to the acceptance of the report. Practice Book § 440.
As to this court's standard of review of an attorney trial referee's findings of the facts of a given case, the Supreme Court has stated that: (1) the trial court may not "retry the case"; and (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book CT Page 6836 § 439, "a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear." Dills v. Town of Enfield, 210 Conn. 705,714, 557 A.2d 517 (1989). Furthermore, a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716. Thus, generally this court's task consists of, first, determining whether "there was . . . evidence to support the attorney trial referee's factual findings," and, second, whether "the conclusions reached were in accordance with the applicable law." Thermoglaze, Inc. v. Morningside Gardens, Co., 23 Conn. App. 741,746, 583 A.2d 1331, cert. denied, 217 Conn. 811,587 A.2d 153 (1991).
However, in the present case, as noted previously, the defendant did not file either a motion to correct, or exceptions to the report. It follows therefore that the factual findings by the referee must stand uncorrected because the failure to file exceptions in effect constitutes a waiver of the right to "attack the subordinate factual findings contained in the report." SeeBernard v. Gershman, 18 Conn. App. 652, 655, 559 A.2d 1171 (1989) (holding that a failure to file a motion to correct waived the right to challenge the referee's subordinate factual findings).
The defendant, as noted previously, did file objections to the report in accordance with Practice Book § 440, which provides that one may file objections in the event a party contends that the referee's conclusions were not properly reached on the basis of the subordinate facts that were found, or that there were erroneous evidentiary rulings, or "other reasons why the report should not be accepted." The objection relates to the referee's conclusion that the plaintiff Peter Holmes should recover the sum of $55,000 from the defendant on the basis that he had proved his allegation of malicious prosecution. The defendant argues that she had probable cause to initiate criminal proceedings against her son because there were rulings in the two litigated cases involving title to the subject premises that the defendant had complete and sole title.[5] The defendant claims that these decisions implicate the doctrine of res judicata or issue preclusion and prevent Peter Holmes from arguing that he and his father had a joint venture and hence that he had an ownership interest in the subject premises. The defendant further contends that because she was the sole beneficiary of her late husband's estate, and sole stockholder in Holmes Estates, Inc., she had probable cause to initiate criminal proceedings against CT Page 6837 the plaintiff. According to the defendant, she acted in good faith and with probable cause in initiating criminal proceedings because the plaintiff did not even have a "colorable" claim to the premises, as decided by the referee.
The trial court must accept the referee's findings of fact in the absence of a motion to correct and exceptions to the report, and therefore its task is limited to determining whether the legal conclusions "are legally and logically correct and whether they find support in the facts found by the referee." Bernard v.Gershman, supra, 18 Conn. App. 656; Practice Book § 440. In the present case, the referee found as facts that the defendant had initiated criminal proceedings against her son, which terminated in his favor, and that she acted without probable cause and with malice. The defendant is limited to claiming that the referee's conclusion of malicious prosecution does not follow legally and logically from the facts. To prevail in a cause of action for malicious prosecution, a plaintiff must prove certain elements: "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." McHale v.W.B.S. Corporation, 187 Conn. 444, 447, 446 A.2d 815 (1982). The referee found as facts that the plaintiff Peter Holmes had proved each of such elements. Once the elements of a cause of action in malicious prosecution are established factually, the conclusion that the cause of action has been proved follows legally and logically.
As to the special defense of res judicata and collateral estoppel, Commissioner of Motor Vehicles v. DeMilo Co.,233 Conn. 254, 267, ___ A.2d ___ (1995), states that: "[c]laim preclusion, sometimes referred to as res judicata, and issue preclusion, sometimes referred to a collateral estoppel, are first cousins. Both legal doctrines promote judicial economy by preventing relitigation of issues or claims previously resolved. . . . Under Connecticut law, [c]ollateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It must also have been actually decided and the decision must have been necessary to the judgment. . . . The CT Page 6838 doctrine of collateral estoppel is based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate." (Citations omitted; emphasis in original; internal quotation marks omitted.) The referee points out that whether the defendant had engaged in malicious prosecution was not litigated in the prior two cases.Holmes v. Holmes, supra, 32 Conn. App. 317, involved whether Peter Holmes had proved that a joint venture with his father actually existed. The issue in the other case, Medina v. Holmes,
was the identity of the rightful owner of the subject premises. In March, 1990, when Ann Holmes attested in her affidavit that Peter Holmes had "stolen" $3,750, neither of the two cited cases had been decided.[6] The referee found that the defendant filed her affidavit without probable cause, and with malice, in order to gain an advantage in her son's civil suit against her. This finding must remain unchallenged in the absence of a motion to correct and the filing of exceptions.
In conclusion, no material error in the referee's report has been found, or any other sufficient reason upon which to find that the report is unacceptable. See Practice Book § 443. The court finds that the referee's conclusions were "properly reached on the basis of the subordinate facts found." See Practice Book § 440.
Accordingly, judgment enters for the plaintiff Peter Holmes to recover from the defendant the sum of $55,000, plus statutory costs as taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 6th day of June, 1995.
William B. Lewis, Judge