Therese DEFELICE

v.

INGRASSIA, et al.

No. 3:00–CV–1594 (JBA).

United States District Court,
D. Connecticut.

May 24, 2002.

· John R. Williams, Katrena K. Engstrom, Williams & Pattis, New Haven, CT, for Plaintiff.

US Court of Appeals, Office of the Clerk, New York City, Notice only.

Barbara Brazzel–Massaro, Office of the City Attorney, Bridgeport, CT, for Defendants.

### RULING ON MOTION FOR SUMMARY JUDGMENT [DOC. # 21]

ARTERTON, District Judge.

Therese DeFelice, a former nursing student at the Bridgeport Hospital School of Nursing, was the subject of two separate investigations by the Bridgeport Police Department: one for the alleged larceny of a set of keys, the other for alleged controlled substance violations. During the course of these investigations, she was subjected to a search of her person and of her dormitory room, and was arrested twice. The second arrest was based on the search that had occurred nine months earlier. All the evidence on which the second arrest was based was later found to have been destroyed. All criminal charges

were eventually discontinued.[1]

DeFelice filed this 42 U.S.C. § 1983 action against the six Bridgeport police officers involved in the investigations or execution of the search and arrest warrants, alleging that the defendants violated her Fourth Amendment rights by omitting critical information from the search and arrest warrants, thereby resulting in an unlawful search and seizure.[2] She also alleges that their actions constitute the state law tort of intentional infliction of emotional distress. The defendants have moved for summary judgment on all counts, and for the reasons set out below, the Court grants the defendants' motion as to the constitutional claims and declines to exercise supplemental jurisdiction over DeFelice's remaining state law claim.

I.   *Factual Background*

In April of 1998, defendant Ingrassia, an Acting Bridgeport Detective, received a complaint from Nursing Instructor Lori Beucler. Beucler had received anonymous correspondence containing personal information, such as her social security number, medical information and salary. All of this information was contained in files at the school, and two school officials told Ingrassia that an intruder had made "unforced entries" (i.e., presumably with keys) into several offices at the school, taking personal information about employees.

While investigating these allegations, Ingrassia learned of possible narcotics violations. He continued his investigation of suspicious activity related to the Beucler letter, while defendants Ciambriello and Meriano, who were assigned to the Narcot-

ics and Vice Division, investigated the narcotics information. During the course of this separate investigation, a confidential informant told Ciambriello and Meriano that DeFelice was dispensing controlled substances to other students. They conducted a "controlled buy" in which the confidential informant, acting under police direction, procured drugs from DeFelice. Based on this information, Ciambriello and Meriano applied for and obtained a search warrant authorizing the search of DeFelice's person and her dorm room at the Nursing School.

The search warrant was executed on May 6, 1998 by four of the defendants in this action: Ingrassia, Paul Carlson of Narcotics and Vice, and patrol officers Danny Garcia and Cheryl Thomas. Recovered during the search were: prescription vials containing various prescription drugs; two straws containing a white powdery residue that field tested as cocaine; $220 in cash; prescription records and financial records, as well as other "miscellaneous records and papers"; "bills, documents and other paperwork related to Therese DeFelice"; various medical records; a key ring with twelve keys; and cassettes and a cassette recorder. With the exception of the key ring, all of the evidence recovered during the search related to the narcotics investigation. Also during the May 6, 1998 search, defendant Thomas undertook a search of DeFelice's person, during which she asked DeFelice to lift her shirt, snapped the front and back of DeFelice's bra, put her hands in DeFelice's pants pockets, and asked De-

---

1.   The larceny charges were nolled, while the narcotics charges were dismissed.

2.   DeFelice's allegations as to her arrest are in the nature of the traditional common law tort of false arrest, which is the unlawful restraint by one person of the physical liberty of anoth-

er. *Green v. Donroe*, 186 Conn. 265, 267, 440 A.2d 973 (1982); *see also generally Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir.1995) (discussing the interplay of the common law of torts and Fourth Amendment actions under 42 U.S.C. § 1983).

Felice to remove her pants and touch her toes, and "snapped the back of my underwear." No evidence was recovered from Thomas's search of DeFelice's person.

After the May 6, 1998 search, Ingrassia continued his investigation of the Beucler letter by focusing on the keys found in DeFelice's room during the search. He discovered that the keys belonged to Trudy Gripp, a hospital employee, who had reported them missing in April of 1998. On May 27, 1998, Ingrassia applied for and was issued a warrant to arrest DeFelice for larceny of the keys. DeFelice was arrested, and in November of 1998, several months after the arrest, the charges were nolled. While DeFelice disputes this point, defendants contend that the charges were dropped because DeFelice made a contribution to the Salvation Army.

On February 17, 1999, over nine months after the original search and three months after all pending charges had been nolled, defendant Carlson (who had himself participated in the search) prepared a second application for an arrest warrant. While this second arrest warrant was based on the fruits of the May 6, 1998 search, it was for narcotics charges, not larceny (of keys), which was the subject of the first arrest warrant. After a warrant was issued on March 18, 1999, Carlson held the warrant for two and a half months, and then arrested DeFelice on her birthday. It was later discovered that the narcotics evidence had been destroyed, and the criminal prosecution was dismissed on July 2, 1999.

Thereafter, DeFelice commenced this action alleging that the defendants violated the Fourth Amendment by unlawfully searching and arresting her. DeFelice claims that the defendants omitted information from the search and arrest warrant applications which would have defeated probable cause. Additionally, she claims that defendants exceeded the scope of the May 6, 1998 search warrant by confiscating items from her room that were not related to the purposes of the search and by subjecting her to a "body cavity" search unauthorized by the warrant.

## II. *Standard*

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if he or she can point to an absence of evidence to support an essential element of the nonmoving party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party").

When deciding a motion for summary judgment, " 'the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (*quoting United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). However, a party opposing summary judgment "may not rest upon the mere allegations or deni-

als of the adverse party's pleading." Fed. R.Civ.P. 56(e).

"On a summary judgment motion, the district court properly considers only evidence that would be admissible at trial." *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736 (2d Cir.1998) (*citing Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir.1997)). Nonetheless, when the dispute concerns whether officers had probable cause to obtain a search or arrest warrant, the district court properly considers hearsay evidence that was used to obtain the warrant in question. *See United States v. 15 Black Ledge Drive*, 897 F.2d 97, 101 (2d Cir.1990); *United States v. 4492 S. Livonia Rd.*, 889 F.2d 1258 (2d Cir.1989).

### III. *Analysis*

#### A. *Probable Cause*

■ There can be no federal civil rights claim for false arrest where the arresting officer had probable cause. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995). To the extent that DeFelice's allegations encompass a Fourth Amendment claim in the nature of malicious prosecution, *see, e.g., Singer v. Fulton County Sheriff*, 63 F.3d 110, 116–117 (2d Cir.1995) (recognizing possibility of such a claim), the absence of probable cause would defeat that claim, as well. *See McHale v. W.B.S. Corp.*, 187 Conn. 444, 447, 446 A.2d 815 (1982) (absence of probable cause is an element of malicious prosecution claim in Connecticut); *Conway v. Village of Mount Kisco*, 750 F.2d 205, 214 (2d Cir.1984) (state law defines elements of a malicious prosecution claim asserted under § 1983). Similarly, as to DeFelice's claims that the April 29, 1998 search warrant was obtained unlawfully, the existence of probable cause would be a complete defense, because the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause."

■ Probable cause exists when an officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution to believe that an offense has been committed by the person to be arrested. *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir.2000). In evaluating a claim that material evidence has been omitted from (or false evidence has been added to) a warrant application such that probable cause is allegedly absent, a court "put[s] aside allegedly false information, suppl[ies] any omitted information and determine[s] whether the contents of the corrected affidavit would have supported a finding of probable cause." *Soares v. Connecticut*, 8 F.3d 917, 920 (2d Cir.1993) (*citing Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir.1992) and *Magnotti v. Kuntz*, 918 F.2d 364, 368 (2d Cir.1990)). If probable cause remains on the face of the corrected warrant, no constitutional violation of the plaintiff's Fourth Amendment rights has occurred. *Id.* (*citing Cartier*, 955 F.2d at 845).

#### 1. April 29, 1998 Search Warrant Application

■ It is undisputable that probable cause existed for the April 29, 1998 search warrant application. The application sets out the existence of a confidential informant who not only claimed to know that DeFelice was dispensing drugs *but who actually procured drugs from DeFelice in a police sting operation.* The warrant specifies: (i) the officers' determination that the CI did not have any drugs or contraband on her person immediately prior to the procurement, (ii) the circumstances of the CI's procurement, and (iii) the fact that the drugs given by DeFelice to the CI were, in fact, controlled substances.

DeFelice's complaint alleges that Ingrassia, Meriano and Ciambriello "withheld from the affidavit evidence of the plaintiff's innocence," such as the fact that the informant had not made all of the statements attributed to her, the fact that the informant had been brought to Ingrassia by the chief suspect in a related investigation over missing keys, and that there was another suspect, known to the defendants, who appeared more likely the perpetrator of the matters under investigation than the plaintiff, Compl. ¶ 9. However, the only evidence in opposition to summary judgment is DeFelice's deposition testimony, in which she recounts that Carla Lee, who she claims was the confidential informant, later told her that she had signed blank pieces of paper and that her statements had not been accurately taken by the police. Since DeFelice lacked personal knowledge of the circumstances under which Lee's statement was taken, her testimony in that regard would be inadmissable at trial and thus is not competent for Rule 56 purposes. *See* Fed. R.Civ.P. 56(e). Moreover, Lee's testimony does not contradict the rendition set out in the warrant about the sting operation in which Carla Lee procured drugs from DeFelice under police supervision. Inasmuch as there is no genuine dispute of material fact that probable cause existed for the warrant in question, summary judgment is appropriate on this claim.

2. **May 29, 1998 Arrest Warrant Application**

■ DeFelice alleges in her complaint that when Ingrassia prepared and submitted this arrest warrant application, which pertained to the keys found during the search, Ingrassia omitted evidence of her innocence, "including evidence that the true perpetrator of the crime charged was not the plaintiff but one Danielle Thomas[,] about whom Ingrassia had accumulated substantial evidence of guilt." Compl. ¶ 12.

It is undisputed that the basis asserted for this arrest warrant was the discovery of Gripp's keys in DeFelice's room. Ingrassia's affidavit asserts that the keys were discovered in a cracker box during the search. In the arrest warrant application, Ingrassia describes the recovery of keys from DeFelice's room during the search warrant execution and refers to Trudy Gripp's sworn statement that the keys are in fact hers.

In opposition to summary judgment, plaintiff cites generally to her deposition testimony: "I know I never put keys there or had any knowledge of or touched any keys. . . ." DeFelice Dep. at 157. While she testifies that she has no specific evidence that anyone planted the keys, she alludes to this scenario by referencing the fact that defendants would not let her in the room as they were searching: "what I do find very odd is why was I kept behind my locked closed dorm door. Why was I not seen [sic] or shown every item that was seized from me[?]".[3]

Defendants' averment by affidavit that they found the keys in DeFelice's single dormitory room, and that Trudy Gripp swore to them that the keys belonged to her, is not rebutted by DeFelice's allegation that she never touched any keys or had any knowledge of them. Defendants argue that because DeFelice has no idea how the keys got there, her protestations that she never saw the keys before are "some metaphysical doubt as to the material facts" discussed by the Supreme Court

---

**3.** She also had apparently earlier advanced this scenario in a different form. *See* DeFelice Dep. at 158: "Q: In fact, what you stated earlier was you think maybe Danielle Thomas placed these items in your room? A: I don't know that, either. . . ."

as inappropriate to defeat summary judgment in *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Court agrees. There is no evidence in the record that the defendants planted the keys and thus no rebuttal to defendants' assertion that they found the keys in DeFelice's room. Therefore, DeFelice has failed to come forward with "specific facts showing that there is a genuine issue for trial." Fed.Rule Civ.Proc. 56(e). Because "the purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial[,' w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting from and citing Advisory Committee Note to 1963 Amendment of Fed.Rule Civ.Proc. 56(e) and *First Nat'l Bank v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). Here, the only way a jury could find for DeFelice would be to conclude that the defendants either knew that the keys had been planted or planted the keys themselves. On this record, there is no evidence from which a jury could reasonably draw that conclusion: DeFelice herself claimed to have no idea how the keys got there. On the evidence submitted, there is no factual issue for trial, and summary judgment is appropriate on this claim.

### 3. February 27, 1999 Arrest Warrant

■ In her complaint, DeFelice alleges that in preparing the narcotics arrest warrant application, Carlson omitted facts material to the application, such as: "the plaintiff had previously been arrested in connection with the same investigation, that the prosecution had been nolled, that false and/or manufactured evidence had

been generated by police officers and their agents, [and] that no physical evidence to support the charges even existed." Compl. ¶ 15. DeFelice also notes that the warrant was sought nine months after the search that yielded the evidence upon which it is based, and that Carlson held the warrant for two and a half months after it was issued, only to serve it on her birthday. From this, she argues that a jury could infer improper motive and misconduct on the part of Carlson.

On this record, DeFelice's belief that Carlson had some improper motive or purpose is not totally without any inferential support. No explanation has been offered for why Carlson waited two and a half months, until her birthday, to arrest DeFelice on the warrant. Nonetheless, as set out above, probable cause is a complete defense to DeFelice's constitutional claims in this case, and on this record, there is no genuine dispute of material fact that Carlson had probable cause to seek DeFelice's arrest based on the fruits of the earlier search.

The omission of information about DeFelice's earlier arrest and the fact that it was nolled is not legally material because it was based on an entirely separate charge—larceny of keys. While it must have appeared to DeFelice that the second arrest was nothing more than a repetition of the charges that had already been resolved, the earlier arrest and nolle were based on a separate charge, and thus do not obviate a probable cause determination on the narcotics charge.

While Carlson's alleged omission of the fact that drugs were actually planted by the police in DeFelice's room would be material, the summary judgment record is barred of any evidence from which it could be inferred that police fabricated the drug evidence that was the basis of the warrant. The portions of the warrant application

provided in the summary judgment record list only prescription drugs, and DeFelice in her deposition never claims the police planted prescription drugs. She does claim that as to "the straw with white powdery residue, I never had anything like that in my room," DeFelice Dep. at 156, but that piece of evidence was not mentioned in the warrant application.

DeFelice's claims that Carlson omitted of the fact from his application that "no physical evidence to support the charges even existed" lacks any evidentiary basis. If all physical evidence of the drugs seized from DeFelice's apartment nine months earlier had been destroyed at the time Carlson applied for the warrant, there potentially could be a material dispute over whether Carlson knew of this evidence destruction at the time he sought the warrant for DeFelice's second arrest and thus whether he had probable cause. However, there is no evidence offered that Carlson knew the drugs had been destroyed when he applied for the warrant.[4]

Given this deficiency, there is no genuine issue of material fact left for trial on this claim.

B.  Unreasonable Scope of May 6, 1998 Search

■ DeFelice claims that defendants unreasonably exceeded the scope of the warrant authorizing the May 6, 1998 search, by subjecting her to a "body cavity search" and by taking items from her dorm room that were not authorized by the warrant. Defendant Cheryl Thomas states in her affidavit:

The search I conducted of Ms. DeFelice was not a cavity search, but a visual search of her person which was completed in the bathroom at 200 Mill Hill Avenue. Upon completion of the search of Ms. DeFelice, I stood with her in the hallway with her by the door which was partially closed because the room was too small for everyone to fit. Upon completion of the search of Ms. DeFelice, I waited with her until the other officers had completed a search of her room. I had no other contact with Ms. DeFelice.

Thomas Aff. ¶¶ 7–9.

Additionally, DeFelice's deposition testimony describes the event as follows:

A:  I was told that she needed to search me in the ladies' room and needed to see me in the ladies room.

  \*      \*      \*      \*      \*      \*

Q:  And what happened then?

A:  Exactly, I'm not sure. But I do remember her asking me if I had anything on my person that I should not have on. I stated, "No." And she asked me to lift my shirt, and she snapped the back of my bra, the front of it also. And then she went in my pockets of my pants and told me to drop those also. And—

Q:  And what else?

A:  And then to bend over and touch my toes.

Q:  And did you do that?

A:  Yes.

Q:  And anything else?

---

4.  In fact, the only evidence in the record that the drugs were destroyed at all is an oblique reference in DeFelice's deposition testimony. *See* DeFelice Dep. at 172–173. There, however, she gives no time frame for the destruction and states that she does not know who destroyed the evidence or why. *See id.* While defendants conceded at oral argument that the evidence was in fact destroyed pursuant to court order, the record is silent as to when it was destroyed.

A: No. She just snapped the back of my underwear, but they were not taken off.

Q: Now, when you say "snapped" you mean pulled?

A: Well, yeah. I guess to see if something fell out of them or something. She did that with the bra too.

Q: Did she do anything else?

A: No.

DeFelice Dep. at 59.

■ "The reasonableness requirement of the Fourth Amendment applies not only to prevent searches and seizures that would be unreasonable if conducted at all, but also to ensure reasonableness in the manner and scope of searches and seizures that are carried out, whether pursuant to a warrant or under 'exigent circumstances.'" *Ayeni v. Mottola,* 35 F.3d 680, 684 (2d Cir.1994) (*citing Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) and *Tennessee v. Garner,* 471 U.S. 1, 7–8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). "Law enforcement officers conducting searches under a warrant are limited in their conduct to either (a) actions expressly authorized by the warrant, or (b) such further actions as are impliedly authorized because they are reasonably related to accomplishing the search authorized by the warrant or accomplishing additional legitimate law enforcement objectives, such as insuring the safety of the searching officers and effectively responding as law enforcement officers to circumstances that might arise during the course of the search." *Id.* at 685 (footnotes omitted).

As set out above, the defendants had probable cause, based on the confidential informant, to obtain a warrant to search DeFelice's person and property. A warrant was issued authorizing both searches, and directed officers to seize, *inter alia,* prescription drugs, money, papers showing occupancy, identification, telephone records, bank records, and computers used for record keeping of drug sales. As to the items seized, DeFelice in her deposition takes issue with the police taking her prescriptions, credit cards, cash and papers she needed for school. Each such item, however, is specifically listed in the warrant, so the defendants' seizure could not exceed the authorized scope of the search.

As to the search of her person, DeFelice claims that she was unlawfully subjected to a "body cavity" search. The warrant here authorized only a search of DeFelice's "person," and at least one court has held that a search warrant for a "person" is not sufficient to authorize a body cavity search. *U.S. v. Nelson,* 36 F.3d 758, 760 (8th Cir.1994).

In DeFelice's case, Officer Thomas averred her search was not a "cavity search," and was completely visual. While there is little case law on the subject, California statutory law countenances the possibility of a "visual cavity search":

> "Body cavity" only means the stomach or rectal cavity of a person, and vagina of a female person. "Visual body cavity search" means visual inspection of a body cavity. "Physical body cavity search" means physical intrusion into a body cavity for the purpose of discovering any object concealed in the body cavity.

Cal. Penal Law § 4030(d). DeFelice's own description of Thomas's search does not qualify even as a "visual body cavity search" under California's definition, however, because DeFelice never testified the Officer Thomas made a visual inspection of any defined body cavity. Instead, she testifies that Thomas "just snapped the back of my underwear, but they were not taken off," and indicates that "snapped" means

pulled. Further, she speculates that Thomas was attempting to see if something would fall out, and does not claim that Thomas was attempting to visually inspect her body cavities. Thus, even if a visual body cavity search would have exceeded the scope of the warrant, there is no evidence of a visual body cavity search and thus no genuine issue of disputed fact left for trial on this claim.

### C. Intentional Infliction of Emotional Distress

Inasmuch as the Court concludes that summary judgment is appropriate on all constitutional claims asserted in this action, the Court declines to exercise supplemental jurisdiction over DeFelice's state law claim of intentional infliction of emotional distress.

### IV. *Conclusion*

For the reasons set out above, Defendants' Motion for Summary Judgment [doc. # 21] is GRANTED.

The Clerk is directed to close this case.

IT IS SO ORDERED.